IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| THOMAS MICHAEL TOLBERT, JR., )<br>    Plaintiff, )<br>     )<br>    v. )<br>     )<br>DOMINION ENERGY, INC., )<br>    Defendant. )<br>     ) | Civil Action No. 3:25CV256 (RCY) |

**MEMORANDUM OPINION**

This matter is before the Court on Plaintiff's Motion to Remand for Lack of Jurisdiction ("Motion to Remand," ECF No. 7). Thomas Michael Tolbert, Jr. ("Plaintiff" or "Mr. Tolbert") brings this action against Dominion Energy, Inc. ("Defendant" or "Dominion") alleging violations of the Virginia Human Rights Act, specifically failure to make reasonable accommodations in violation of Virginia Code § 2.2-3905.1 and employment discrimination and retaliation in violation of Virginia Code § 2.2-3905. Defendant removed this case to federal court, and Plaintiff now moves to remand the action to the Circuit Court for the City of Richmond. The Motion has been fully briefed. The Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Motion to Remand will be granted.

**I. FACTUAL BACKGROUND**

The Court's jurisdiction over this action turns on whether the federal regulatory scheme for nuclear safety constitutes an area of complete preemption such that all claims related to nuclear safety arise under federal law and thus confer federal court jurisdiction. Given that the instant Motion to Remand turns on a jurisdictional issue, the underlying facts of the parties' dispute are of limited utility at this early stage of litigation. Nevertheless, the Court understands the following facts as

encompassing Plaintiff's allegations in his Complaint and providing context for the immediate jurisdictional problem.

Mr. Tolbert is a military veteran who was employed by Dominion as a Nuclear Security Specialist at the Surry Nuclear Power Station in Surry County, Virginia, since February 2009. Compl. ECF No. 1-2 ¶¶ 6, 7. Mr. Tolbert was diagnosed with post-traumatic stress disorder ("PTSD") arising from his military service and, due to this diagnosis, considers himself "a person with a disability as defined by state and federal law." *Id.* ¶ 8. In December 2023, Mr. Tolbert attended a routine health check appointment with Dominion's contracted doctor. *Id.* ¶ 11. The doctor asked Mr. Tolbert several questions about his military service and if he had been diagnosed with PTSD. *Id.* The evening after this appointment, Dominion requested mental health and medical records from Mr. Tolbert and suspended his employment. *Id.* ¶ 12. Dominion informed Mr. Tolbert that his employment would be terminated if he failed to provide his medical history to the company within 90 days. *Id.* ¶ 13.

Mr. Tolbert alleges that he "complied and provided all medical documentation necessary for Dominion to render employment decisions." *Id.* ¶ 14. Mr. Tolbert also "requested an accommodation related to the sufficiency of the medical information requested." *Id.* ¶ 16. Dominion denied this accommodation request, suspended Mr. Tolbert, and terminated his employment. *Id.* ¶¶ 15, 17. A notice from Dominion to Mr. Tolbert, dated May 24, 2024, stated that Mr. Tolbert "received an unfavorable psychological determination and was unwilling to cooperate with the process." *Id.* ¶¶ 19–20(a). As a result, the notice explained, Dominion was "unable to make a decision on [his] trustworthiness and reliability." *Id.* ¶ 20(b).

Mr. Tolbert contests both Dominion's characterization of his psychological determination as "unfavorable" and his response as uncooperative. *Id.* ¶ 21. According to Mr. Tolbert, Dominion was able to make a decision on his trustworthiness and reliability based on his longtime employment with the company and the "extensive" medical records he did provide, and therefore, Dominion wrongfully

2

terminated him. *Id.* ¶¶ 22–23. Mr. Tolbert ultimately alleges discrimination "based on his disability (PTSD) and status" and retaliation in response to his "[engagement] in protected activities under the law such as requesting accommodations and reporting unfair treatment on the basis of his disability." *Id.* ¶¶ 25, 26.

Mr. Tolbert filed his Complaint in state court on February 14, 2025, seeking damages for Dominion's employment discrimination, retaliation, and failure to make reasonable accommodations in violation of the Virginia Human Rights Act. *Id.* ¶¶ 4–7. Defendant was served with the Complaint on March 12, 2025, and removed the case to this Court on April 2, 2025, asserting that federal question jurisdiction is proper pursuant to 28 U.S.C. § 1331. Not. Removal, ECF No. 1 ¶¶ 3–4; 6–15. Both parties are domiciled in Virginia. *Id.* ¶¶ 1–2; Mot. Remand 1. Defendant filed a Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6) on April 2, 2025. Mot. Dismiss, ECF No. 4. Shortly thereafter, on April 7, 2025, Plaintiff filed the instant Motion to Remand. Mot. Remand, ECF No. 7. Defendant responded in opposition to the Motion to Remand on April 21, 2025. Resp. Opp'n, ECF No. 9.

## II. LEGAL STANDARD

**A. Motion to Remand**

A case filed in state court may be removed to federal court if the federal district court has subject matter jurisdiction based on the existence of a federal question or diversity of citizenship. 28 U.S.C. §§ 1331, 1332, 1441(a). Federal question jurisdiction requires that the cause of action in a civil matter arise under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Diversity jurisdiction requires complete diversity of citizenship among the parties and an amount in controversy in excess of $75,000. 28 U.S.C. § 1332. A federal district court must remand a case to state court if, at any point prior to final judgment, the federal court appears to lack subject matter jurisdiction. 28 U.S.C. § 1447(c). The state court may then proceed with the case. *Id.*

By statute, a defendant has "30 days after receipt by or service . . . of the initial pleading or summons . . . to file the notice of removal." 28 U.S.C. § 1446(b)(2)(B). Once removed to federal court, the plaintiff may challenge removal by moving to remand the case back to state court. *Id.* The party seeking removal bears the burden of establishing federal jurisdiction. *See Mulcahey v. Columbia Organic Chemicals Co.*, 29 F.3d 148, 151 (4th Cir. 1994) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921)). Furthermore, removal jurisdiction must be strictly construed, and any doubts as to the propriety of removal must be resolved in favor of remanding the case to state court. *Id.* (citations omitted).

As a general matter, the issue of whether a federal question has been presented is determined by looking at the face of the Plaintiff's well-pleaded complaint, which is to say, whether the Plaintiff has explicitly raised a federal claim. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (citations omitted). The existence of a federal defense generally may not serve as the basis for removal to federal court because it is the *plaintiff's* complaint that establishes whether the case arises under federal law. *Id.* (citing *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908); *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 9–10 (1983) (emphasis in original)). An exception to the well-pleaded complaint rule is triggered, however, when Congress has "so completely pre-empt[ed] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987).

Therefore, if nuclear safety is a recognized area of complete preemption, then federal question jurisdiction exists, and Defendant's removal was proper. Otherwise, this Court lacks jurisdiction, and the case must be remanded to state court.

**B. Complete Versus Ordinary Preemption**

There are two types of preemption that, despite their linguistic relation, are "not as close kin jurisprudentially as their names suggest." *Lontz v. Tharp*, 413 F.3d 435, 441 (4th Cir. 2005).[1] Complete preemption is a "jurisdictional doctrine," while ordinary preemption simply declares the primacy of federal law, regardless of the forum or claim. *Id.* (citing *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 371 (4th Cir. 2003)). In practice, ordinary preemption operates as a "federal 'defense to the allegations.'" *Id.* (quoting *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987). As a mere defense, the "preemptive effect of a federal statute . . . will not provide a basis for removal." *Id.* (quoting *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6 (2003) (cleaned up)). Even if a defense of federal law preemption "forms the very core of the litigation, it is insufficient for removal" from state to federal court. *Id.* (citing *Caterpillar,* 482 U.S. at 392).

By contrast, complete preemption can, in rare circumstances, operate as a jurisdictional hook supporting removal of an action from state to federal court. *Id.*; *Caterpillar,* 482 U.S. at 392. Carving out a narrow exception to the well-pleaded complaint rule, the doctrine of complete preemption provides that "if the subject matter of a putative state law claim has been totally subsumed by federal law—such that state law cannot even treat on the matter—then removal is appropriate." *Id.* (citing *Aetna Health,* 542 U.S. at 207 (additional citations omitted)). The rare, completely preempted claim does not run afoul of the well-pleaded complaint rule because, "when complete preemption exists,

---

[1] The Court finds this summary of the frequent conflation of complete preemption with ordinary preemption from the Southern District of Texas particularly illuminating:

> Unfortunately, the inclusion of the term 'preemption' within the complete-preemption doctrine's label, while not inaccurate, has enkindled a substantial amount of confusion between the complete preemption doctrine and the broader and more familiar doctrine of ordinary preemption. And this confusion has led countless litigants (as well as some courts) to equate the defense of field preemption, which defeats a plaintiff's state-law claim because federal law 'occupies the field' in which the state-law claim falls, with the doctrine of complete preemption, which creates federal subject-matter jurisdiction over preempted state-law claims.

*Woodard-Hall v. STP Nuclear Operating Co.,* 473 F. Supp. 3d 740, 746 (S.D. Tex. 2020) (cleaned up) (internal citations omitted).

'there is no such thing as the state action,'" since the federal claim displaces the state cause of action on the face of the complaint. *Id.* (quoting *Beneficial*, 539 U.S. at 11). "Complete preemption thus 'transforms the plaintiff's state-law claims into federal claims[,]'" and the complaint is then understood to state a federal question, justifying removal under 28 U.S.C. § 1441(a). *Id.* (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 474 (1998)).

Because "complete preemption undermines the plaintiff's traditional ability to plead under the law of his choosing, the Supreme Court has made clear it is 'reluctant' to find" that the doctrine applies. *Id.* (quoting *Metro. Life Ins. Co.*, 481 U.S. 58, 65). In fact, the Supreme Court has found complete preemption in only a handful of federal statutes, namely: the National Bank Act (*see Beneficial*, 539 U.S. at 10–11); the Employee Retirement Income Security Act (*see Metro. Life Ins. Co.*, 481 U.S. at 66–67); and the Labor Management Relations Act (*see Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 559–60 (1968)). Likewise, the Fourth Circuit applies a rebuttable "presumption against preemption" in "cases involving statutes that the Supreme Court hasn't discussed in the complete preemption context." *Skidmore v. Norfolk S. Ry. Co*, 1 F.4th 206, 212 (4th Cir. 2021) (citations omitted). The Fourth Circuit has found that the preemptive force of select other federal statutes "transforms a state-law complaint . . . into a complaint stating a federal claim for purposes of the well-pleaded complaint rule." *See e.g., Rosciszewski v. Arete Associates, Inc.,* 1 F.3d 225, 232–33 (4th Cir. 1993) (holding that removal to federal court was proper because plaintiff's Virginia Computer Crimes Act Claim was preempted by the federal Copyright Act); *Skidmore,* 1 F.4th 206 (holding landowner's quiet title claims were completely preempted by Interstate Commerce Commission Termination Act).

Still, the standard for determination of complete preemption is exacting: the party seeking removal must show that Congress intended for the federal statute to indisputably and entirely displace any state cause of action over a given subject matter. *Lontz*, 417 F3d at 441. This requires a showing

6

that: "(1) the preempting statute displays a clear congressional intent to 'entirely displace' state law; and (2) the preempting statute creates an exclusive federal cause of action in an area of 'overwhelming national interest.'" *Skidmore*, 1 F.4th 206, 212 (citing *Lontz*, 413 F.3d at 441). Congressional intent to "provide *the exclusive* cause of action" must be clear from the text of the statute. *Lontz*, 413 F.3d at 441 (quoting *Beneficial*, 539 U.S. at 9, 11 (emphasis in original)).

Reasonable doubt as to congressional intent must be resolved against a finding of complete preemption. *Id; see also Maryland Stadium Authority v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) ("We are obliged to construe removal jurisdiction strictly because of the significant federalism concerns implicated. If federal jurisdiction is doubtful, a remand to state court is necessary." (cleaned up)).

### III. DISCUSSION

The parties do not dispute the timeliness of Plaintiff's Motion to Remand. The Motion turns on whether the federal regulatory scheme for nuclear safety constitutes an area of complete preemption and thus gives rise to federal question jurisdiction. Understanding complete preemption as distinct from ordinary preemption, the Court finds that Defendant has not met its burden to establish federal jurisdiction upon removal and thus must remand the action to state court. The parties' briefing on the remand issue reflects their mutual conflation of ordinary preemption with the narrow jurisdictional rule of complete preemption.

**A. Parties' Arguments**

Mr. Tolbert moves to remand this matter to Virginia state court because he has advanced no federal claims. Mot. Remand 1. Specifically, Plaintiff contends that because his Complaint advances two counts under the Virginia Human Rights Act, the matter arises solely under state law. *Id.* Further, both Plaintiff and Defendant are domiciled in Virginia. *Id.* Thus, without diversity or federal question jurisdiction, Mr. Tolbert insists this Court lacks jurisdiction to hear the case. *Id.* at 4–5.

Mr. Tolbert points out that "Defendant seemingly seeks to invoke federal jurisdiction through preemption." *Id.* at 2. Mr. Tolbert identifies three types of federal preemption—namely, express preemption, field preemption, and conflict preemption—and submits that none apply to the instant matter. *Id.* at 2–4. On conflict preemption, Mr. Tolbert elaborates that a state statute must stand as an obstacle to the objectives of federal law in order for a court to find that the federal law preempts the relevant state statute. *Id.* at 2, 3–4. But here, Mr. Tolbert argues, Defendant has failed to allege that the Virginia Human Rights Act conflicts with any federal law. *Id.* at 4. In support of his position that field preemption also does not apply to this case, Mr. Tolbert cites *English v. General Electric Company,* a case in which the Supreme Court affirmed the Fourth Circuit's decision that an employee's state law claim against a nuclear facility operator for intentional infliction of emotional distress was not preempted by the Energy Reorganization Act. *Id.* at 2–3; *English v. Gen Elec. Co.*, 496 U.S. 72 (1990).

Dominion counters that Mr. Tolbert's claims are completely preempted by nuclear safety law because his Complaint necessarily invokes and requires an interpretation of federal regulations related to nuclear safety. Resp. Opp'n 2–3. As a result, Dominion insists this Court has federal question jurisdiction over this matter and should therefore deny Mr. Tolbert's Motion to Remand. *Id.* at 3.

Dominion builds its argument on the following premise from the Fourth Circuit's decision in *Rayner v. Smirl*: "[o]nce an area of state law has been completely preempted, 'any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law.'" *Id.* at 3; *Rayner v. Smirl*, 873 F.2d 60, 63 (4th Cir. 1989) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987)). Dominion views preemption as a question of congressional intent in enacting the federal law at issue. Resp. Opp'n 3. The federal law at issue here, according to Dominion, is the Atomic Energy Act ("AEA") of 1954, which assigned authority

8

over licensing of nuclear facilities to the Nuclear Regulatory Commission (NRC), while reserving economic authority for the various states. *Id.* at 3–4.

According to Dominion, the "vast regulatory scheme" promulgated by the NRC includes rules that contemplate nuclear facilities as places of employment, such as 10 C.F.R. § 73.56, which outlines personnel access authorization requirements. *Id.* at 4. Other NRC regulations establish a "fitness-for-duty" program that licensed operators of nuclear power reactors must implement and apply to employees, contractors, vendors, and other individuals with access to nuclear power plants to maintain regulatory compliance. *Id.* at 5; 10 C.F.R. §§ 26.1–26.825. Dominion highlights how Mr. Tolbert's allegations involve Dominion's determination that it was unable to assess his "trustworthiness and reliability," which tracks the language of the regulatory scheme.[2] *Id.*

Ultimately, Dominion posits that "the Federal Government has occupied the *entire field of nuclear safety concerns*, except the limited powers ceded to the States." *Id.* at 4. Thus, in Dominion's view, Plaintiff's state law claims "would necessarily interfere with the operation of [their] nuclear facility and the realm of nuclear safety law" when "the Supreme Court has repeatedly explained the primacy of federal law in the nuclear safety context[.]" *Id.* at 4. As a result, Dominion concludes, "nuclear safety law preempts Plaintiff's claims, [and] this Court has subject matter jurisdiction over this action." *Id.* at 8.

**B. Nuclear Power and Safety Regulation**

In an effort both to situate this case within the relevant topical landscape and fully appreciate Dominion's argument for the preemption of Plaintiff's state law claims by federal law, the Court now

---

[2] Both the personnel access authorization requirements and the fitness-for-duty regulatory program direct that nuclear facilities monitor and assess employees using indicia of trustworthiness and reliability. *See, e.g.,* 10 C.F.R. § 73.56(c) (describing "[g]eneral performance objective" of nuclear power plant personnel access authorization requirements as follows: [t]he licensee's or applicant's access authorization program must provide high assurance that the individuals . . . are trustworthy and reliable, such that they do not constitute an unreasonable risk to public health and safety or the common defense and security, including the potential to commit radiological sabotage." *See also* 10 C.F.R. § 26.23 (listing "reasonable assurance that individuals are trustworthy and reliable as demonstrated by the avoidance of substance abuse" first in a list of performance objectives for fitness-for-duty programs).

9

engages in a brief review of the relevant history of and authority on federal nuclear safety regulation. Notably, an agency regulation with the force of law can, like any other expression of federal law, have a preemptive effect on state requirements. *Wyeth v. Levine*, 555 U.S. 555, 576 (2009).

Enacted in 1954, the AEA authorized the development of commercial nuclear power and assigned the Atomic Energy Commission broad regulatory authority over such development. *History,* United States Nuclear Regulatory Commission, https://www.nrc.gov/about-nrc/history (last visited Oct. 24, 2024) [hereinafter NRC History Webpage]; *Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.,* 435 U.S. 519, 550 (1978). The AEA empowered state public utility commissions to make initial decisions regarding the need for nuclear power, while reserving issues of nuclear licensing as they relate to national security, public health, and safety as "[t]he Commission's prime area of concern". *Vermont Yankee,* 435 U.S. at 550. Two decades later, the Energy Reorganization Act of 1974 separated the Atomic Energy Commission into two new agencies, one of which became the U.S. Nuclear Regulatory Commission (NRC). NRC History Webpage. The NRC continued to focus its attention on public health and safety issues, including radiation protection, reactor safety, licensing, and regulation of nuclear materials. *Id.*

The regulatory scheme subsequently promulgated by the NRC includes access authorization and control requirements for the physical protection of nuclear materials at licensee facilities. Some of these regulatory rules contemplate nuclear facilities as places of employment and require that licensee facilities maintain a number of safety-oriented policies and programs for individuals with "unescorted access" to the plant. 10 C.F.R. § 73.56(b)(1)(i). To maintain unescorted access privileges, an individual associated with the licensee nuclear facility must, for example, remain "subject to a behavioral observation program," complete annual training or testing, and submit to an annual supervisory review. 10 C.F.R § 73.56(i)(1). The licensee's reviewing official, through assessing a variety of indicators, ultimately determines whether an individual with unescorted access

10

to the nuclear facility "continues to be trustworthy and reliable." 10 C.F.R § 73.56(i)(1)(v). Armed security officers are included in a category of individuals associated with licensee facilities that are subject to psychological reassessment every five years. 10 C.F.R § 73.56(i)(1)(v)(B).

The NRC has also incorporated "Fitness for Duty Programs" within its regulatory scheme, which apply to licensee operators and their associated personnel. 10 C.F.R §§ 26.3–4. The stated "performance objectives" of such programs include providing "reasonable assurance that individuals are trustworthy and reliable" and not "mentally or physically impaired from any cause, which in any way adversely affects their ability to safely and competently perform their duties." 10 C.F.R. § 26.23. Substantively, fitness for duty programs required by NRC regulations involve training, drug and alcohol testing, and behavioral observation. *See* 10 C.F.R §§ 26.29, 26.31, 26.33.

**C. Application to Plaintiff's Motion to Remand**

Because only complete preemption—not any variation of ordinary preemption—can supplant state law claims in a complaint with a federal question, Dominion must show: (1) a clear intent for federal law to entirely displace state law; and (2) that the preempting statute—here, the AEA—creates an exclusive federal cause of action in an area of overwhelming national interest that extinguishes Plaintiff's claims under the Virginia Human Rights Act. *See Skidmore*, 1 F.4th at 212 (citing *Lontz*, 413 F.3d at 441); *Beneficial*, 539 U.S. at 9, 11. The Court is not satisfied that Dominion has made such a showing and, in the face of such doubt, must remand the case to state court for lack of jurisdiction.

As an initial matter, Dominion does not cite any provision of the AEA, nor any NRC regulation, that expressly provides for complete preemption in this case. And for good reason—upon the Court's own review, no such provision exists in either scheme that serves as a clear basis for removal of Mr. Tolbert's claims. Ironically, the exact sort of preemptive language that Dominion

11

needs to support its invocation of this Court's jurisdiction exists in a closely related nuclear incident liability law.

Passed as an amendment to the AEA in 1957, the Price-Anderson Act provides certain federal licensees with a system of private insurance, government indemnification, and limitations of liability for claims of "public liability," defined as "legal liability arising out of or resulting from a nuclear incident or precautionary evacuation". *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 476–77 (1999). In an "unusual preemption provision," the Price-Anderson Act "not only gives federal courts jurisdiction over tort actions arising out of nuclear accidents but also expressly provides for removal of such actions brought in state court even when they assert only state-law claims."[3] *Beneficial*, 539 U.S. at 6; *see also El Paso,* 526 U.S. at 474 (describing Congressional preference for a federal forum within the Price-Anderson Act as "unmistakable").

Dominion cannot rely on the preemption provision of the Price-Anderson Act here given that no nuclear accident is involved in this matter, and Mr. Tolbert asserts no tort claim. However, the fact that such closely related federal law in the realm of nuclear safety contains an express preemption provision renders the absence of a parallel provision covering the present action stark. Despite having a ready blueprint available, neither Congress nor the NRC has elected to extend the preemptive aspect of the Price-Anderson Act to claims like Mr. Tolbert's—discrimination in the context of employment at a nuclear power station—which strongly suggests its intent *not* to preempt such claims.

---

[3] The text of the Price-Anderson preemption provision reads, in part:

> With respect to any public liability action arising out of or resulting from nuclear incident, the United States district court in the district where the nuclear incident takes place, or in the case of a nuclear incident taking place outside the United States, the United States District Court for the District of Columbia, shall have original jurisdiction without regard to the citizenship of any party or the amount in controversy. Upon motion of the defendant . . . any such action pending in any State court . . . or United States district court shall be removed or transferred to the United States district court having venue under this subsection.

42 U.S.C. § 2210(n)(2).

12

As for the second part of the two-prong complete preemption test embraced by the Fourth Circuit in *Skidmore,* Dominion does not point to an exclusive federal cause of action created by the AEA or corresponding NRC regulations that extinguishes Plaintiff's claims under the Virginia Human Rights Act. And again, the Court's own research yielded no such language to support Dominion's complete preemption position. In his Complaint, Mr. Tolbert alleges, in short, Dominion's failure to make reasonable accommodations in light of his PTSD and subsequent discrimination and retaliation by Dominion when the company terminated his employment. *See generally* Compl. The regulations cited by Dominion in support of complete preemption direct nuclear power plant licensees to maintain access authorization programs; implement behavioral observation for certain staff; and determine that these individuals are trustworthy, reliable, and otherwise fit for duty with the facility. 10 C.F.R. §§ 73.56, 26.23, 26.33; Resp. Opp'n 4–6. At no point, however, do these cited regulations contemplate the rights or remedies of individuals like Mr. Tolbert who allege that their licensee-employer administered mandatory safety programs in a manner that violated legal rights derived from state law. 10 C.F.R. § 4.530[4] outlines "[g]eneral prohibitions against discrimination," and 10 C.F.R. § 4.570 specifies compliance procedures, but still no federal cause of action is advanced as the exclusive mechanism for discrimination claims like Mr. Tolbert's. As a result, the Court cannot agree with Dominion that this case properly presents a complete preemption situation.

The lack of textual support for complete preemption in this context, upon examinations of both the AEA and NRC regulations, is independently fatal to Dominion's position. *See Lontz*, 413 F.3d at 441 (quoting *Beneficial*, 539 U.S. at 9, 11). However, the Court also finds little support among

---

[4] Dominion does not argue as part of its position on preemption that it or Mr. Tolbert are subject to Subpart E, Enforcement of Nondiscrimination on the Basis of Disability in Programs or Activities Conducted by the U.S. Nuclear Regulatory Commission. The Court does not decide today whether this subpart does in fact apply to Dominion and Mr. Tolbert but rather gleans from this provision additional information regarding intended remedial and compliance procedures for allegations of discrimination arising from NRC programs.

13

case law for an interpretation of the AEA and corresponding NRC regulations as completely preemptive of state-law-based discrimination claims.

Dominion's position relies, in large part, on the Supreme Court's engagement with the AEA in two seminal nuclear power cases: *Pacific Gas*, 461 U.S. 190 (1983), and *English*, 496 U.S. 72 (1990). However, after careful review, the Court understands both cases as supporting a substantive preemption *defense* by Dominion in this case—not a federal jurisdictional hook via complete preemption.

In *Pacific Gas,* a nuclear power plant initiated legal action in federal court seeking a declaration that provisions of a California state law addressing nuclear wastes were invalid under the Supremacy Clause and preempted by the AEA. *Pacific Gas,* 461 U.S. at 198. The Supreme Court granted certiorari to consider just two sections of the California law, ultimately deciding that the challenge to the first section was not ripe for review and that the second section was not preempted by federal law. *Id.* at 200–03. There are two problems with Dominion's present reliance on *Pacific Gas*. First, the Supreme Court did not confront a jurisdictional issue in *Pacific Gas*. Because the utility initiated the action, it retained the power to state a federal question and invoke the jurisdiction of the federal district court on the face of its own complaint. *See id.* at 198. On appeal, the Supreme Court considered the three forms of ordinary preemption—express, field, and conflict—when reviewing the substance of the dispute.[5] *Id.* at 203–04. Here, however, this Court has not yet reached the substance of the parties' dispute and instead finds itself without jurisdiction upon removal.

---

[5] To be clear, the Supreme Court does not employ the "ordinary" qualifier for preemption adopted for clarity purposes by this Court. However, its description of relevant doctrine, together with the posture of the case, indicate contemplation of the three kinds of defensive preemption as opposed to jurisdictional, complete preemption:

> It is well-established that within Constitutional limits Congress may preempt state authority by so stating in express terms. Absent explicit preemptive language, Congress' intent to supercede [sic] state law altogether may be found from a scheme of federal regulation so pervasive as to make reasonable the inference that Congress left no room to supplement it . . . Even where Congress has not entirely displaced state regulation in a specific area, state law is preempted to the extent that it actually conflicts with federal law.

Second, *Pacific Gas* interprets the AEA as holding space for dual regulation of nuclear-powered electricity generation: the federal government maintains control over the safety aspects of energy generation, whereas the states exercise their traditional authority over economic questions. *See id.* at 205, 211–212. Given that the Supreme Court endorses dual regulation in the realm of commercial nuclear power operations, we accept the possibility that Mr. Tolbert's allegations could hypothetically present both nuclear safety questions related to federal law and employment discrimination issues within the purview of state law. Mr. Tolbert, whether strategically or otherwise, has raised only state law discrimination causes of action in his Complaint. As a result, despite the apparent relevance of federal nuclear safety regulations to Dominion's alleged course of action, no federal question properly supports this Court's jurisdiction.

Dominion relies on *English* to highlight how, with respect to "national security, public health, and safety" Congress has contemplated "no significant role . . . for the States." *See English*, 496 U.S. at 81; Resp Opp'n 7. Again, in its application of *English,* Dominion neglects to appreciate how the procedural posture of the case it cites differs from that of the instant case. The petitioner in *English* filed a diversity action against a nuclear fuel production facility in federal district court, and a question of ordinary, field preemption arose in the context of adjudicating her state-law tort claim for intentional infliction of emotional distress. *English*, 496 U.S. 77–78. In short, due to the petitioner's election of a federal forum from the get-go, *English* presented no jurisdictional issue like the one this Court confronts here.

Amid its discussion of *English,* Dominion criticizes Mr. Tolbert for "seek[ing] to use state law claims to influence decisions concerning the operation of Defendant's nuclear plant." *See* Resp. Opp'n 7. The Court, however, cannot adopt Dominion's interpretation of Plaintiff's Complaint at this preliminary stage of litigation. From the Court's perspective, Plaintiff has filed two employment

---

*Pacific Gas,* 461 U.S. at 203–04 (internal citations omitted).

discrimination claims under the Virginia Human Rights Act. The Court acknowledges the possibility that final disposition of these claims could have implications for Dominion's operation of its nuclear power plant in a manner that is both safe and in compliance with federal law and regulations. To the extent a viable preemption defense exists, the Court sees no reason why the state court should decline to entertain such a defense when considering the merits of this action. Mr. Tolbert's Complaint, however, does not on its own raise nuclear safety questions that invoke the jurisdiction of a federal court.

Dominion has drawn the Court's attention to *Boldt v. Northern States Power Company* in which the plaintiff, an employee at a nuclear generating plant, brought state law discrimination claims under the Minnesota Human Rights Act based on a theory that the company regarded him as an alcoholic. 904 F.3d 586, 589 (8th Cir. 2018). Dominion submits that the Minnesota district court held that state discrimination law was preempted by nuclear safety law. Resp. Opp'n 8. On appeal, however, the Eight Circuit's preemption analysis for this case was substantially, if not entirely, rooted in the state law's interaction with the Labor Management Relations Act (LMRA)—not the AEA or NRC regulations. *Boldt,* 904 F.3d at 593 (holding "[b]ecause Boldt's claim is 'substantially dependent on analysis of [the] collective-bargaining agreement,' we conclude that section 301 of the LMRA completely preempts his disability-discrimination claim." (citing *Caterpillar*, 482 U.S. at 394)). This Court therefore does not consider *Boldt* persuasive with respect to the instant dispute.

Dominion also references *Tomek v. STP Nuclear Operating Co.* in support of its position that remand is improper in this case. 2018 WL 4403281 (S.D. Tex. 2018). The plaintiff in *Tomek* brought two state law claims alleging discrimination and defamation against his employer after he failed breathalyzer tests and was subsequently terminated from his position as a supervisor at a nuclear power plant. *Id.* at *1. The defendant company removed the case to federal court based on federal question jurisdiction, and the plaintiff did not contest removal. *Id.* The district court ultimately

granted summary judgment in favor of the defendant, finding that field preemption by NRC regulations barred the plaintiff's discrimination claim and that conflict preemption (specifically, conflict between NRC reporting regulations and defamation law) barred the plaintiff's defamation claim. *Id.* at *5, *8. The Court certainly agrees with Dominion that courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.,* 546 U.S. 500 (2006). Therefore, the *Tomek* court presumably determined it had subject-matter jurisdiction in that case. This Court notes, however, that the *Tomek* court's analysis does not distinguish between ordinary and complete preemption, perhaps because it was considering the merits of the plaintiff's claims at the summary judgment stage of litigation. *See generally Tomek*, 2018 WL 4403281 (S.D. Tex. 2018).

      Rather than attempt to fill in the blanks left by the court's assertion of jurisdiction in *Tomek,* this Court instead elects to mirror the analytical framework demonstrated by the same Southern District of Texas court two years later in *Woodard-Hall v. STP Nuclear Operating Co.*, 473 F. Supp. 3d 740 (S.D. Tex. 2020). In *Woodard-Hall,* the plaintiff sued defendant company—the same nuclear operating company in *Tomek*—alleging age, sex, and race discrimination in violation of Texas human rights law. *Id.* at 743–44. The defendant company timely removed the case based on federal-question jurisdiction, arguing that "federal law and corresponding safety regulations promulgated by the NRC preempt[ed] Woodard-Hall's state-law claims" because those claims "fall within the preempted zone of nuclear safety." *Id.* (cleaned up). After delineating the limited jurisdiction of federal courts, the rules governing removal from state to federal court, and—critically—the distinction between complete preemption and ordinary (or defensive) preemption, the court held in *Woodard-Hall* that "since complete preemption [was] not present . . . removal was improper, and the court must remand the case to the state court in which it was originally filed." *See id.* at 748. Just like the Court has found here with Mr. Tolbert, the *Woodard-Hall* court found no provision in the cited nuclear

17

statutes—including the AEA and accompanying regulations promulgated by the NRC—under which Ms. Woodard-Hall could bring her discrimination claims, which alone warranted remand. *See id.*

Ultimately, because Mr. Tolbert's Complaint raises claims solely based on Virginia law, and there is no diversity of citizenship between the parties, Dominion has only the narrow doctrine of complete preemption available in seeking to invoke the jurisdiction of this Court. And for the reasons outlined above, the Court does not find Plaintiff's state law claims to be completely preempted by the AEA or the NRC's regulatory scheme.

Absent additional guidance from the Fourth Circuit or the United States Supreme Court on the completely preemptive effect of the AEA and NRC regulations on state law employment discrimination claims, the Court looks to and is persuaded by the analysis of sister district courts that have examined the issue of complete preemption in this context.[6] Finding that it lacks jurisdiction to adjudicate this matter, the Court must remand the action to the Circuit Court for the City of Richmond.

### IV. CONCLUSION

For the reasons stated above, the Motion to Remand will be granted. Further, Dominion's pending Motion to Dismiss for Failure to State a Claim is denied as moot in light of the Court's finding that it lacks jurisdiction over this matter.

An appropriate Order shall issue.

/s/ RCY
Roderick C. Young
United States District Judge

Dated: October 28, 2025
Richmond, Virginia

---

[6] This Opinion expresses no view as to whether Plaintiff's claims are substantively preempted by federal law pursuant to ordinary preemption doctrine. The viability of any preemption defense advanced by Dominion is properly understood as a question for the state court to resolve.